William L. LEVAR, Appellant,

v.

Mary ELKINS, Appellee.

No. 3917.

Supreme Court of Alaska.

Jan. 4, 1980.

Andrew M. Hemenway and Robert J. Mahoney, Cole, Hartig, Rhodes, Norman & Mahoney, Anchorage, for appellant.

Timothy M. Lynch, Abbott, Lynch, Farney & Rodey, Anchorage, for appellee.

Before CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

CONNOR, Justice.

Mary Elkins lived with William Levar in a nonmarital union for more than 20 years. After the relationship ended, Elkins asserted rights to the property which had been acquired during the relationship. To that end she brought suit alleging causes of action in quantum meruit, contract, and equitable division of property.

This case was tried by jury. During the course of trial, Elkins abandoned the theories of quantum meruit and implied partnership as a basis of recovery. Additionally, the court ruled that the question of equitable division of property could not be submitted to the jury. Thereafter, Elkins relied only on a contract theory of recovery.[1] The case was submitted to the jury under instructions directed solely to the question of whether there was a contract between the parties, either express or implied in fact.[2] A verdict was returned for Elkins in the sum of $15,000.

On appeal Levar asserts error in the denial of his motion for a directed verdict at the close of plaintiff's case, and the denial of a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Both of these issues go to the sufficiency of the evidence. Accordingly, we must determine whether the evidence, viewed in the light most favorable to El-

---

1. Elkins testified that in return for services as a housewife and caretaker for Levar's children, and for money contributed over the years, Levar promised to provide for her for the rest of her life.

2. Because this case was decided on a contractual theory of recovery, we need not consider the questions arising under the much publicized case of *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (Cal.1976). An illuminating and comprehensive discussion of this subject can be found in C. Bruch, "Property Rights of De Facto Spouses Including Thoughts on the Value of Homemakers' Services," 10 Family Law Quarterly 101 (1976).

kins, the non-moving party, is such that reasonable persons could not differ in their judgment. Our task is not to weigh the evidence or judge the credibility of the witnesses. Our task is merely to determine whether there is room for diversity of opinion among reasonable people. If so, the question is one for the jury. *Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216 (Alaska 1978). Our review of the record convinces us that the court ruled correctly on both motions.

■ The case was submitted to the jury on instructions proposed by Levar's counsel. There was conflicting evidence, from which a jury could reasonably find that there was mutual assent and consideration to support a contractual obligation, and that the presumption that the property given and services rendered by Elkins were gratuitous had been overcome. Little would be gained by reviewing that evidence in this opinion. As to these points, there was no error.

■■ Levar asserts that the trial court erred in taking judicial notice of a mortality table. Levar objected to the use of the mortality table on the ground that he was not afforded an opportunity to present information relevant to the propriety of taking judicial notice and that the table was inapplicable to Elkins, who suffered from various physical ailments. As to the first point, the court recognized that Levar should have the opportunity to present relevant information on the propriety of taking notice.[3] The record shows, however, that Levar's counsel did not request a delay in the trial to obtain such information.

On Levar's second point, the court instructed the jury concerning the mortality tables, and specifically told the jury to consider evidence pertaining to Elkins' health. In our view, the court acted properly with respect to the mortality table.[4] The weight of authority is that lack of normal health in the person as to whom life expectancy is determined does not render the tables inadmissible, it merely goes to the weight of the evidence. Anno., 116 ALR 416. There was no error.

■ We find no merit in Levar's claim that the court abused its discretion in finding that Elkins was the prevailing party and, thus, entitled to the award of an attorney's fee under Civil Rule 82.

AFFIRMED.

RABINOWITZ, C. J., not participating.

3. Civil Rule 43(a)(4)[a] provides:
   "The judge shall afford each party reasonable opportunity to present to him information relevant to the propriety of taking judicial notice of a matter or to the tenor of the matter to be noticed."
   Rule 43 was rescinded effective August 1, 1979. (Order No. 366)

4. None of the cases cited by Levar convince us otherwise. These are *Morrison v. State*, 516 P.2d 402 (Alaska 1973); *Morrow v. Mendleson*, 15 Cal.App.2d 15, 58 P.2d 1302 (1936); *Fortner v. Koch*, 272 Mich. 273, 261 N.W. 762 (1935); and *Butler v. Butler*, 180 Minn. 134, 230 N.W. 575 (1930).

The latter three cases concerned so-called "select" mortality tables. These are tables "based upon the actual lives of persons in normal health," (*Butler* 230 N.W. at 579; *Fortner* 261 N.W. at 764) or "average good health" (*Morrow* 58 P.2d at 1305). In contrast, the HEW table in the instant case is based on the entire population and, therefore, does not skew the life expectancy distribution in favor of the appellee. *Morrison* simply held that the trial court should not depart from a mortality table without some evidence to justify such a departure. (at 406).